26 C.C.P.A.(Patents)

## In re THORNBERY et al.
### Patent Appeal No. 4130.

Court of Customs and Patent Appeals.
May 1, 1939.

Brown, Jackson, Boettcher & Dienner, of Chicago, Ill. (Charles V. Hildebrecht, of Chicago, Ill., of counsel), for appellants.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States

Patent Office affirming the decision of the examiner denying patentability in view of prior art of two claims (the only claims), numbered 24 and 25, in appellants' application for patent entitled "Improvements in Thermo-electric Safety Valve."

The claims read:

"24. In combination, a main burner, a fuel supply line therefor, a lighter connected to said fuel supply line and maintaining a constantly burning and relatively restricted pilot flame for lighting said main burner, a normally closed thermo-electric valve in said fuel supply line, and a thermo-couple connected to said thermo-electric valve and having a hot junction at the constantly burning pilot flame, said pilot flame generating a thermo-electric current in said thermo-couple and the control valve in the fuel supply line for the main burner being held open solely by the thermo-electric current generated in said thermo-couple by said pilot flame.

"25. In combination, a main burner, a fuel supply line therefor, a lighter for maintaining a constantly burning and relatively restricted pilot flame for lighting said main burner, a normally closed thermo-electric valve in said fuel supply line, said lighter being connected to said fuel supply line anterior to said thermo-electric valve, and a thermo-couple connected to said thermo-electric valve and having a hot junction at the constantly burning pilot flame, said pilot flame generating a thermo-electric current in said thermo-couple and the control valve in the fuel supply line for the main burner being held open solely by the thermo-electric current generated in said thermo-couple by said pilot flame."

The following references were cited: Franke, 581,707, May 4, 1897; Payne, 1,-582,190, April 27, 1926; Lenning (Br.), 351,712, July 2, 1931.

The following description of appellants' device is taken from the decision of the board: "The invention is a thermo-electric safety valve for a fuel burner. Applicants disclose a main fuel supply line for the burner provided with a normally closed spring valve. A pilot burner pipe is connected to the main supply line ahead of the valve so that fuel is constantly flowing to the pilot burner. An electro-magnet is provided for opening the main valve when the magnet is energized. A thermo-couple is arranged adjacent to the pilot burner so as to be heated thereby. The thermo-couple is connected to the electro-magnet.

When the pilot burner is burning and the thermo-couple is heated, the valve is held open. When the pilot burner is extinguished the valve closes."

The examiner rejected the claims, first, upon Franke alone and, secondly, on the patent to Payne taken in connection with the patent to Lenning. The board affirmed as to both grounds.

In his statement following the appeal to the board, the examiner compared claim 25, supra, with the Franke patent and identified, by reference characters in the drawings of each, the physical features designated eo nomine in the claim as (a) "Main burner," (b) "Fuel supply line," (c) "Lighter," (d) "Thermo-electric valve," (e) "Anterior connection," and (f) "Thermocouple."

In the decision of the board the Franke patent is analyzed as follows: "The Franke patent discloses in Fig. 5, which is a modification of Fig. 1, a fuel valve operated by an electro-magnet. The electro-magnet is energized by a thermocouple located adjacent to the pilot burner and the main burner. The heat from the pilot burner produces a current in the thermocouple and initially opens the fuel valve to some extent to admit gas to the main burner. The heat from the main burner then produces a larger current in the thermocouple which fully opens the valve. The suction of the gas passing into the main burner when the valve is open prevents any gas passing to the pilot burner and it becomes extinguished. The claims distinguish from the patent by reciting that the pilot burner is constantly burning and that the current is generated in the thermocouple solely by the heat from the pilot flame."

The purpose of the lighter mentioned in the claims is, as expressed in claim 25, "for maintaining a contantly burning and relatively restricted pilot flame for lighting said main burner." In claim 25 it is said that the control valve in the fuel supply line for the main burner is held open solely by the thermo-electric current generated in the thermo-couple by the pilot flame.

In other words, appellants define functions which certain of the physical elements designated eo nomine in the claims are intended to perform when arranged in their combination as described.

It is one of appellants' contentions that Franke does not have a constantly burn-

ing and relatively restricted pilot flame. As to this it was pointed out by the examiner, we think correctly, that the Franke drawing does show his igniting burner restricted, and it was the examiner's view that such igniting flame is the full equivalent of a pilot flame, it being said, in substance, that the use of constantly burning pilot burners is so common in the art as to need no citation. However, the examiner did cite Payne as showing a "common constant pilot."

The same thought was expressed by the board as follows: "It is not new to employ a constantly burning pilot burner and to utilize only the heat from the pilot burner to control the opening and closing of the fuel valve. This is shown by Payne. When the pilot burner becomes extinguished in this patent the main fuel valve is closed. In view of this patent it is believed that there would be no invention involved to modify the Franke patent by substituting a constantly burning pilot burner and to locate the thermo couple so that it will be heated solely by the pilot burner."

Appellants challenged the finding as to Payne's disclosure of a constantly burning pilot flame, and this matter is argued extensively in the brief filed on their behalf, as it was in the oral argument before us.

With respect to this contention it is noted that the Payne specification, which relates to gas burners suitable for use in gas furnaces, states that "a main burner is provided for heating purposes and is adapted to be turned on and off by means of a valve operated manually or by thermostatic or other automatic control, and in which a small residual or pilot flame is continually maintained for the purpose of relighting the gas at the main burner when such gas supply is turned on."

The following from the brief of the Solicitor for the Patent Office is deemed pertinent on this point: "It is true that the patent to Payne has a valve by which the pilot light can be cut off but that fact does not prevent it from being a constantly burning pilot in the same sense that appellants' pilot can be said to burn constantly. Even with appellants' alleged constantly burning pilot it is assumed that the pilot will go out at times because if it does not there is obviously no purpose for the mechanism for cutting off the main supply of gas when the pilot light goes out. The whole system is based upon the assumption that the pilot light will not burn constant-

ly because if the pilot light did burn continuously it is obvious that it would never be out and there would be no necessity for cutting off the main supply of gas."

As we understand the concurring decisions below, however, the patent to Payne was cited merely to supplement the finding respecting the common use of constantly burning pilot lights, which common use alone was regarded as anticipatory respecting this feature of the claims.

Another argument on behalf of appellants is that—"Where an external electric circuit is employed as in Payne, the battery and renewal of the same together with the conductor connections between the bimetal element and the electromagnet would render the same practically prohibitive for the purposes for which applicants' invention is provided."

As to this it may be said that the examiner pointed out that the use of thermo-electric couples in this art is old. Franke discloses an arrangement where one is employed to operate the cutoff device, and the Lenning patent recites: "The device of the present invention comprises a valve member normally forced into a position cutting off the gas supply, manual control means for opening the valve for initial lighting of the burner, a thermo couple connected with its hot junction heated by the flame of the burner, an electro magnetic coil electrically connected to the thermo couple and maintaining the valve by its magnetic effect in its open position when the burner is lighted but releasing the valve for automatic closing on extinction of the burner."

We have recognized, as did the tribunals of the Patent Office, that appellants have modified the structures shown in the prior art, and we have considered quite carefully the elaborate arguments made in support of the contention that such modifications involved invention, but we are not convinced that the contention is well founded.

We agree that the claims would not be met by the disclosures of any one of the references without a modification of such disclosures, but unless such modifications involve more than ordinary mechanical skill they do not constitute invention. This principle is so well known that no citation of authorities is deemed necessary. Also, it may be true that no one of the cited references could be combined with another so

that, without modification, appellants' structure would result, but the question of patentability is the same; viz., do the modifications of the combined features represent anything more than that which would be obvious to one skilled in the art. The following from our decision in In re Cordes, 76 F.2d 302, 304, 22 C.C.P.A., Patents, 1158, is deemed apropos of the instant case: "In passing upon the patentability of combination claims we have frequently combined references and held that, in view of such references, an alleged new combination would be obvious to one skilled in the art, and hence unpatentable. * * * Therefore, the new combination did not require the exercise of the inventive faculty."

The decision of the Board of Appeals is affirmed.

Affirmed.